UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JESSICA WEATHER,

                Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.

_____

**REPORT AND
RECOMMENDATION**

11-CV-890
(LEK/VEB)

## I. INTRODUCTION

In June of 2009, Plaintiff Jessica Weather applied for supplemental security income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since June of 2007 due to physical impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorney, Peter W. Antonowicz, Esq., commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 17).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits on July 29, 2007, alleging disability beginning on June 6, 2007. (T at 108-111).[1] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on September 10, 2010, before ALJ Bruce S. Fein.[2] (T at 27). Plaintiff appeared with her attorney and testified. (T at 31-56).

On November 29, 2010, ALJ Fein issued a written decision finding that Plaintiff was not disabled and was therefore not entitled to benefits. (T at 13-21). The ALJ's decision became the Commissioner's final decision on May 26, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

Plaintiff, through counsel, timely commenced this action on July 28, 2011. (Docket No. 1). The Commissioner interposed an Answer on December 14, 2011. (Docket No. 9). Plaintiff filed a supporting Brief on March 5, 2012. (Docket No. 14). The Commissioner filed a Brief in opposition on April 16, 2012. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is recommended that the Commissioner's motion be

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 10).

[2] The hearing was held in Utica, New York; the ALJ appeared via video conference from Syracuse. (T at 29).

[3] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

granted, Plaintiff's motion be denied, and this case be dismissed.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado

v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

While the claimant has the burden of proof as to the first four steps, the

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.     Analysis

### 1.     Commissioner's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 17, 2009, the date she applied for benefits. (T at 15). The ALJ concluded that Plaintiff had the following "severe" impairments, as defined under the Act: myofascial cervical spine and neck pain, left shoulder and wrist pain. (T at 15-16).

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 16-17). The ALJ concluded that Plaintiff retained the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently, walk/stand for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. (T at 17). The ALJ determined that Plaintiff could occasionally engage in postural activities and occasionally use her upper left extremity to reach and handle, but should avoid overhead lifting with her upper left extremity. (T at 17-19).

The ALJ found that Plaintiff could not perform her past relevant work as a certified nurse's aide, child care aide, cashier, hair stylist, stock picker, or deli counter clerk, because those jobs required the performance of work-related activities precluded by Plaintiff's residual functional capacity. (T at 20).

Considering Plaintiff's age (27 years old on the date the application was filed), education (limited), work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T at 20-21).

Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act between the application date (July 17, 2009) and the date of his decision (November 29, 2010) and was therefore not entitled to benefits. (T at 21). As noted above, the ALJ's decision became the Commissioner's final decision on May 26, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers two (2) principal arguments in support of her position. First, Plaintiff challenges the ALJ's residual functional capacity ("RFC") determination. Second, Plaintiff contends that the ALJ did not properly assess her credibility. This Court will address both arguments in turn.

### a.        Residual Functional Capacity

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must

include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

As discussed above, the ALJ concluded that Plaintiff retained the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently, walk/stand for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. (T at 17). The ALJ determined that Plaintiff could occasionally engage in postural activities and occasionally use her upper left extremity to reach and handle, but should avoid overhead lifting with her upper left extremity. (T at 17-19).

Plaintiff challenges the ALJ's RFC determination, pointing to assessments provided by Dr. Pierre Herard, her treating physician. In June of 2009, Dr. Herard completed a Functional Capacity Questionnaire, in which he opined that Plaintiff could occasionally lift less than 10 pounds, but never more than that. (T at 267). He also indicated that Plaintiff experiences impaired sleep, sensory loss, muscle weakness, and reduced range of motion. (T at 267). Dr. Herard assessed that Plaintiff would miss more than 4 days of work per month due to her impairments and/or treatment. (T at 267).

In September of 2010, Dr. Herard completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) form, in which he opined that Plaintiff could frequently

lift 5 pounds or less; stand/walk for less than 2 hours in an 8-hour workday, and sit upright in a straight-back chair for less than 2 hours in an 8-hour workday. (T at 333). Dr. Herard concluded that Plaintiff could never climb, crouch, crawl, or stoop; and only occasionally balance or kneel. (T at 333). He found that Plaintiff would need to lay down intermittently throughout the day at an unpredictable frequency and would experience incapacitating pain that would cause Plaintiff to be "off-task for at least 50% of the time in an 8-hour workday." (T at 333-34).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

134; <u>Clark v. Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir.1998); <u>Schaal v. Apfel</u>, 134 F.3d 496, 503 (2d Cir. 1998).

In the present case, the ALJ afforded no weight to Dr. Herard's opinions, finding them inconsistent with the physician's treatment notes and contradicted by the overall medical record. (T at 19). In particular, as discussed above, Dr. Herard completed two form Functional Capacity Questionnaires, in which he opined, *inter alia*, that Plaintiff was limited to lifting no more than 10 pounds (in June of 2009) and 5 pounds (in September of 2010). The ALJ concluded that these extremely restrictive findings were contradicted by Dr. Herard's contemporaneous treatment notes and the other evidence of record. The ALJ resolved this conflict by affording no weight to Dr. Herard's questionnaire comments and basing his RFC determination on the treatment notes and other evidence of record.

As discussed further below, the question before this Court is not whether it would resolve the conflicting evidence in the same way as the Commissioner, but whether the Commissioner's resolution of the conflict was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). For the following reasons, this Court finds that the ALJ's decision to discount Dr. Herard's opinions was consistent with applicable law and supported by substantial evidence.

A March 2008 MRI of the cervical spine showed no evidence of bulging or protruding discs. (T at 265). A February 2009 treatment note from Dr. Herard indicated that Plaintiff could lift 20 pounds. (T at 262). In later assessments, Dr. Herard consistently assessed full muscle strength, with the exception of slightly decreased strength in Plaintiff's left hand and finger grip. (T at 252, 298, 307, 328, 331). These findings were made in June of 2009

(T at 252), October 2009 (T at 298), March of 2010 (T at 308), and May of 2010 (T at 329).[6] Given the contradiction between the physician's treatment notes, which cover an extended period, and the doctor's findings on the functional assessment forms, it was not improper for the ALJ to credit the contemporaneous treatment notes and give no weight to the disability assessments, particularly because, as discussed below, the treatment notes were consistent with the overall evidence of record. [7]

In June of 2008, Dr. Mark Goodman, an independent medical examiner, opined that Plaintiff had a "mild disability," and could lift/push/pull less than 20 pounds frequently, less than 30 pounds occasionally, and should avoid "forceful repetitive tight gripping with the left hand and wrist." (T at 238).

In August of 2008, Dr. David Kerschner, a chiropractor, performed an independent medical examination and found "no disability" and opined that Plaintiff could return to work without restriction. (T at 244). Although Dr. Kerschner is not considered an "acceptable medical source" under the Social Security Regulations, his opinion may be considered as

_____

[6]By way of further example, in his June 2009 medical assessment form, Dr. Heard checked a section indicating that Plaintiff experienced muscle weakness and sensory loss. (T at 267). However, in March and August of that year, Dr. Heard found full muscle strength, with the exception of slightly decreased strength in Plaintiff's left hand and finger grip. (T at 247, 252). In March of 2009, Dr. Heard noted that the results of a nerve conduction study were essentially "unremarkable." (T at 249). In his September 2010 medical assessment form, Dr. Heard opined that Plaintiff could stand/walk for less than 2 hours in an 8-hour day and could only lift 5 pounds or less. (T at 333). In a treatment note from the same month, Dr. Heard reported that Plaintiff denied joint pain, muscle weakness, and loss of strength. (T at 338). He noted that she "ambulates well and has a normal reciprocal gait." (T at 338).

[7]Also, given the substantial evidence in the record, the ALJ was entitled to choose among the properly supported medical opinions and was not required to re-contact Dr. Herard. See Balsamo v. Chater 142 F.3d 75, 81 (2d Cir.1998); see also McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir.1983)) ("[A]n ALJ is free ... to choose between properly submitted medical opinions."); Rebull v. Massanari, 240 F. Supp.2d 265, 273 (S.D.N.Y.2002)(explaining that ALJ's function in weighing the evidence would be "rendered nugatory if, whenever a treating physician's stated opinion is found to be unsupported by the record, the ALJ were required to summon that physician to conform his opinion to the evidence").

to the severity of Plaintiff's impairments and is supportive of the ALJ's RFC assessment.[8]

In November of 2009, Dr. George Sirotenko, a consultative examiner, assessed moderate limitations regarding left upper extremity overhead use (e.g. reaching behind the head or back); moderate limitations as to kneeling, squatting, bending, and/or using stairs, inclines or ladders on a repetitive basis. (T at 278). Dr. Sirotenko also found a moderate limitation with respect to lumbar spine forward flexion, extension or rotation. (T at 278).

In September of 2009, Dr. Yu, a non-examining State Agency medical analyst, reviewed Plaintiff's records and opined that Plaintiff retained the RFC to lift 20 pounds occasionally and 10 pounds frequently, and walk 6 hours in an 8-hour work period. (T at 268). Although the opinion of a non-examining agent cannot constitute substantial evidence by itself, such an opinion may be given some weight when considering whether the ALJ's RFC assessment is adequately supported. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Plaintiff also argues that the ALJ failed to adequately address evidence that she suffered from Bell's Palsy. However, the record indicated that she only experiences

---

[8]There are five categories of "acceptable medical sources" defined in the Social Security Regulations. See 20 C.F.R. § 404.1513 (a). Chiropractors are not included among the "acceptable medical sources" and their opinions are not entitled to any special weight. Rather, chiropractors are listed among the "other medical sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913 (d)(1).

symptoms an average of three times per year (T at 303) and the symptoms were generally resolved by prescription medication, without adverse side effects. (T at 327).

"Conflicts in evidence . . . are for the Commissioner to resolve." White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). If there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. Where, as here, the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. Accordingly, this Court finds no reversible error with regard to the ALJ's RFC determination.

### b. Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and

other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide

whether there are legitimate reasons for the ALJ's disbelief." <u>Young v. Astrue</u>, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting <u>Brandon v. Bowen</u>, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, Plaintiff testified as follows: She experiences severe headaches, pain in her left hand and back, and sensitivity to light. (T at 43, 50-51, 52). The pain causes sleep difficulties. (T at 43). Her pain medications cause dizziness, shortness of breath, and nausea. (T at 43-44). She cares for her young children and performs various household chores, but with difficulty and with frequent rest breaks. (T at 44-48). Plaintiff stated that she cannot sit for more than an hour or stand for more than 30 minutes and her ability to walk is very limited. (T at 49-50). She cannot lift more than 5 pounds. (T at 53).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effect of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (T at 19).

This Court finds that the ALJ's credibility assessment was supported by substantial evidence. As outlined above, the ALJ's RFC determination was consistent with (and Plaintiff's testimony was contradicted by) the findings of Dr. Goodman (T at 238), Dr. Sirotenko, (T at 278), Dr. Kerschner, and Dr. Yu (T at 268). Further, with regard to Plaintiff's credibility, two examiners found evidence of "symptom magnification" (T at 238, 244).[9]

---

[9]Dr. Goodman noted "numerous non-physiologic responses" during his physical examination of the Plaintiff, suggestion that Plaintiff's expressions of pain were voluntary (as opposed to reflexive). (T at 238). He also opined that Plaintiff demonstrated "sub-maximal effort" when asked to perform tasks. (T at 238). Dr. Kerschner observed that Plaintiff was able to walk. stand, sit, and get on and off the examination table "without any apparent difficulty." (T at 242). He also noted that Plaintiff exited his office "walking

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." <u>Carroll v. Secretary of Health and Human Servs.</u>, 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." <u>Aponte v. Sec'y, Dep't of Health & Human Servs</u>, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted).

Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. <u>See</u> <u>Tejada v. Apfel</u>, 167 F.3d 770, 776 (2d Cir.1999) (citing <u>Pascariello v. Heckler</u>, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); <u>see</u> <u>also</u> <u>Snell v. Apfel</u>, 177 F.3d 128, 135 (2d Cir.1999).

There is no question that Plaintiff lives with pain. However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1552 (2d Cir. 1983). Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of

---

normally and enter[ed] the passenger front seat of a Ford SUV with no difficulties." (T at 243). Dr. Kerschner opined that Plaintiff's gait and observed movements in and out of his office were inconsistent with his clinical test results, which he found suggestive of symptom magnification. (T at 243). As noted above, it is not for this Court to resolve the conflicting opinions concerning whether and to what extent Plaintiff may be exaggerating her symptoms. The resolution of conflicting evidence and assessment of a claimant's credibility are tasks reserved to the Commissioner. Where, as here, those tasks were completed in accordance with applicable law and the findings are supported by substantial evidence, this Court cannot substitute its judgment for that of the Commissioner.

disability].” 42 U.S.C. § 423(d)(5)(A).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). The ALJ's credibility determination should therefore be upheld.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating provider, the consultative examiner, independent medical examiners, and the non-examining review consultant, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

_____

Victor E. Bianchini
United States Magistrate Judge

Dated:   November 5, 2012

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY

Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

November 5, 2012

Victor E. Bianchini
United States Magistrate Judge