UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

JESSICA WEATHER,

       Plaintiff,

 -against-                6:11-CV-00890 (LEK/VEB)

MICHAEL J. ASTRUE, Commissioner
of Social Security,

       Defendant.

_____

## **DECISION and ORDER**

**I. INTRODUCTION**

This matter comes before the Court following a Report-Recommendation filed on November 5, 2012 by the Honorable Victor E. Bianchini, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d) of the Northern District of New York. Dkt. No. 18 ("Report-Recommendation"). After fourteen days from the service thereof, the Clerk has sent the entire file to the undersigned, including the Objections by Plaintiff Jessica Weather ("Plaintiff"), which were filed on November 21, 2012, and the Reply to Plaintiff's Objections, which was filed by Defendant on December 5, 2012. Dkt. Nos. 19 ("Objections"), 20 ("Reply").

**II. BACKGROUND**

Plaintiff filed an application for Supplementary Security Income ("SSI") on July 17, 2009, alleging disability beginning on June 6, 2007. Dkt. No. 10 ("Transcript") at 108-111. After her initial application was denied, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on September 10, 2010, before ALJ Bruce S. Fein. <u>Id.</u> at 27. Plaintiff appeared at the hearing with her attorney and testified. <u>Id.</u> at 31-56.

On November 29, 2010, the ALJ issued a written decision finding that Plaintiff was not disabled and was therefore not entitled to benefits. Id. at 13-21. The ALJ's decision became the Commissioner's final decision on May 26, 2011, when the Appeals Council denied Plaintiff's request for review. Id. at 1-3. Plaintiff, through counsel, timely filed her appeal and commenced this action on July 28, 2011. Dkt. No. 1 ("Complaint"). Defendant filed an Answer on December 14, 2011. Dkt. No. 9.

Plaintiff filed her supporting Brief on March 5, 2012. Dkt. No. 14 ("Plaintiff's Brief"). And, on April 16, 2012, Defendant filed a Brief in opposition. Dkt. No. 15 ("Defendant's Brief"). Pursuant to General Order No. 18, Judge Bianchini proceeded – and the Court proceeds – as though both parties had accompanied their Briefs with motions for judgment on the pleadings.

In his Report-Recommendation, Judge Bianchini recommended that the Commissioner's decision denying Plaintiff SSI benefits be affirmed in full. Report-Rec. For the following reasons, the Court adopts the Report-Recommendation in its entirety and dismisses Plaintiff's Complaint.

## III. STANDARD OF REVIEW

### A. Review of Magistrate's Report-Recommendation

The Court is to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). Where, however, an objecting "party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the report and recommendation only for clear error." Farid v. Bouey, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008) (quoting McAllan v. Von Essen, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007)) (citations and quotations omitted); see also Brown v. Peters, No. 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997). "A [district] judge . . . may

2

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### B. Review of the ALJ's Determination

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Instead, a reviewing court will only reverse the Commissioner's determination if the correct legal standards were not applied or if the determination was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see also Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

The substantial evidence standard requires evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). That is, a court must afford the Commissioner's determination

3

considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984) (citing Bastien v. Califano, 572 F.2d 908, 912 (2d Cir.1978)).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.[1] See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and the five-step process remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42 (1987). While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See id. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of the inquiry is, in turn,

---

[1] This five-step process is detailed as follows:
> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

4

divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g), 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

## IV. DISCUSSION

### A. The Report-Recommendation

The Report-Recommendation is structured around what Judge Bianchini identifies as Plaintiff's two "principal arguments." Report-Rec. at 6. "First, Plaintiff challenges the ALJ's residual functional capacity ('RFC') determination. Second, Plaintiff contends that the ALJ did not properly assess her credibility." Id.

Central to the first question is the ALJ's reliance – or lack thereof – on the opinion of Plaintiff's treating physician, Dr. Pierre Herard. Id. at 7-9. On appeal from the ALJ's determination, Plaintiff contended that the ALJ had not adhered to the "treating physician's rule" and had erroneously disregarded Dr. Herard's opinions.[2] Pl.'s Br. at 7-11. In rendering his decision, the ALJ afforded no weight to Dr. Herard's opinions, concluding that they were inconsistent with the physician's treatment notes and contradicted by the overall medical record. Tr. at 19. Emphasizing that "[c]onflicts in evidence . . . are for the Commissioner to resolve" and that "[i]f there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder,"

---

[2] Under the "treating physician's rule," an ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

5

Judge Bianchini concluded that he could not find reversible error on this issue. Report-Rec. at 12 (citing White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983))).

In the case of Plaintiff's second argument, her basic contention is that the ALJ erred in concluding that Plaintiff's complaints of disabling pain were not credible. See generally Pl.'s Br. at 11-16. Plaintiff emphasizes that it is not sufficient for an ALJ simply to state that she has found a claimants statements to be incredible; rather, the ALJ must adhere to a specific formula and rely on a specific set of factors in reaching a credibility determination.[3] See generally id. Specifically, in situations where a "plaintiff's pain contentions are not supported by objective medical evidence," Goodale v. Astrue, No. 11-CV-821, 2012 WL 6519946, at *10 (N.D.N.Y. Dec. 13, 2012), the ALJ must consider:

> 1. The claimant's daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Precipitating and aggravating factors;
> 4. Type, dosage, effectiveness, and side effects of medication that the claimant has taken to alleviate her symptoms;
> 5. Present or past treatment, other than medication, for relief of pain or other symptoms;
> 6. Any measures the claimant uses or has used to relieve her pain or other symptoms; and
> 7. Other factors concerning functional limitations and restrictions due to pain or other symptoms.

Bush v. Shalala, 94 F.3d 40, 46 n.4 (2d Cir. 1996) (citing 20 C.F.R. § 404.1529(c)(3); SSR 88-13).

In the Report-Recommendation, Judge Bianchini concludes that the ALJ adhered to these guidelines in assessing Plaintiff's credibility and that there was substantial evidence – based on the testimony of other doctors and experts – to support the ALJ's finding. See generally Report-Rec. at

---

[3] See also Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y.1999); Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y. 1997).

6

14-16. Further, Judge Bianchini emphasizes the unique ability of an ALJ to make credibility determinations while "directly observing a claimant's demeanor and other indicia of credibility." Id. at 15 (citing Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999) (citing Pascariello v. Heckler, 621 F. Supp. 1032, 1036 (S.D.N.Y. 1985)); Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999)).

### B. Objections

Plaintiff raises three general objections to the Report-Recommendation. See Obj. at 1.[4] First, Plaintiff contends that Judge Bianchini failed to address "[P]laintiff's assertion that the Social Security Administration should have employed the services of a vocational expert." Id. Second, Plaintiff contends that Judge Bianchini failed to address her claims that "her disability was caused by conditions in addition to 'myofascial cervical spine and neck pain [and] left shoulder and wrist pain.'" Id. Third, Plaintiff argues that Judge Bianchini failed to consider that the consultative physicians whose findings supported the ALJ's decision were hired by the worker's compensation board and offered opinions only on "work-related injuries." Id.

### C. Decision to Adopt the Report-Recommendation

While some of the arguments contained in the Objection appear to resemble closely those made in Plaintiff's initial Brief, in an abundance of caution, the Court reviews the portions of the Report-Recommendation to which Plaintiff objects *de novo*. 28 U.S.C. § 636(b). The Court reviews the remainder of the Report-Recommendation only for clear error and finds no such error. Farid, 554 F. Supp. 2d at 307.

*1. Lack of Vocational Expert*

---

[4] In referring to specific portions of the Objections, the Court uses the page numbers found at the bottom of each page, rather than the numbers inserted electronically by the Clerk of the Court.

7

Plaintiff first contends that Judge Bianchini erred in affirming the ALJ's decision because the ALJ had reached his decision without consulting with a vocational expert. Obj. at 2. "If a claimant has nonexertional limitations that significantly limit the range of work permitted by his exertional limitations, the ALJ is required to consult with a vocational expert." Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986); Blacknall v. Heckler, 721 F.2d 1179, 1181 (9th Cir. 1983)) (internal quotation marks omitted). "However, the 'mere existence of a nonexertional impairment does not automatically . . . preclude reliance on the guidelines.'" Id. (quoting Bapp 802 F.2d at 603) (alteration in original). In determining if a nonexertional impairment "significantly limits" a claimants range of work, courts consider whether the impairment causes "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Bapp, 802 F.2d at 605-06.

In this case, while Plaintiff contends that her impairments significantly limit her range of work, she provides limited argument in her Objections. See Obj. at 2. Indeed, in her Objections, this argument is raised in a single paragraph. See id. In her initial Brief on appeal, she raises this argument at slightly greater lengths, contending that because the ALJ found that she could only perform a "compromised range of light work," he was required to consult with a vocational expert. Pl.'s Br. at 3-4, 10. Therefore, in determining if the ALJ erred (and Judge Bianchini erred in recommending the ALJ be affirmed on this issue), the Court must determine whether being able to perform only a "compromised range of light work" "so narrows [Plaintiff's] possible range of work as to deprive [her] of a meaningful employment opportunity." Bapp 802 F.2d at 605-06.

The Court notes at the outset that the definition of "significant limitation" articulated by the

8

Second Circuit in Bapp and Zabala appears somewhat circular. That is, in order to determine if the ALJ had to consult with a vocation expert who would purportedly be able to determine if Plaintiff would be able to find employment despite her condition, the Court must first determine if Plaintiff would be able to find employment despite her condition. The Court recognizes that the depth and scope of these inquiries may well be different (i.e., the Court or ALJ addresses this question at a high level of generality based on the guidelines, caselaw, and perhaps common sense, whereas the vocational expert uses a more specific set of skills and resources).[5] Nevertheless, without putting too fine a point on it, the question that triggers the ALJ's obligation to consult with a vocational expert is – at its core – the same question that the expert is purportedly uniquely qualified to answer.

Based on this line of reasoning, it appears that consulting with a vocational expert would usually be the prudent course of action and would certainly obviate the need to perform this inexpert inquiry and inexpert review. Nevertheless, in viewing the ALJ's determination through the prescribed deferential standard, the Court cannot conclude that this case falls in the category delineated by the Second Circuit in which vocational expert testimony is essential. While the ALJ *did* identify limitations on Plaintiff's albility to perform light work,[6] the Court is not convinced that he identified the sort of sweeping limitation necessary to trigger this obligation. That is, this appears to be a case wherein the ALJ identified the "mere existence of a nonexertional impairment" as opposed to an impairment that eliminated all possible avenues of employment. See Zabala, 595 F.3d at 410. Therefore, *contra* Plaintiff's assertions, the ALJ did not identify a major impairment

---

[5] Indeed, to the extent that the expert does *not* perform a different function from the Judge in this analytical phase, the Court is uncertain as to why her input is a necessary supplement to the guidlines.

[6] See Dkt. No. 10-2 at 20.

9

and then fail to consult with an ALJ; rather, he identified a limitation and used his own judgment based on other evidence on the record to conclude that Plaintiff was not deprived of a realistic chance of employment.

Because the Second Circuit has explicitly stated that vocational expert consultation is not required in every case in which a claimant suffers from a nonextertional impairment, see id., and because of the deferential standard afforded to ALJ decision-making, the Court is unable to conclude that the ALJ erred as a matter of law in reaching his decision absent input from a vocational expert.

### 2. Additional Causes of Disability

In her Objections, Plaintiff argues that both the ALJ and Judge Bianchini erred in failing to consider all of Plaintiff's medical issues that might have given rise to a finding of disability. Obj. at 2-5. It appears that this argument contains a re-packaging of the facts that Plaintiff had previously alleged that the ALJ failed to consider in her brief. Compare id., with Pl.'s Br. at 7-11. Even reviewing this objection *de novo*, however, the Court reaches the same result as Judge Bianchini. That is, the Court concludes that the ALJ provided substantial evidence for his finding. Even if there were conflicting evidence or medical evidence that weighed more strongly in Plaintiff's favor, it is not the place of the Court on yet another round of review to conduct an independent factual determination. See White, 2008 WL 3884355, at *11 (citing Fiorello, 725 F.2d at 176). Where an ALJ's determination "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. Therefore, the Court does not find that the ALJ erred in his consideration of the various medical evidence on the sources of Plaintiff's physical impairments.

### 3. Consultative Physicians

Plaintiff's third argument in opposition to the Report-Recommendation is that Judge Bianchini failed to consider that the consultative physicians whose findings supported the ALJ's decision were hired by the worker's compensation board and offered opinions only on "work-related injuries." Obj. at 1. This argument is closely tied to the argument raised by Plaintiff at each stage of this Appeal and at each stage of this litigation that the ALJ failed to apply the treating physician's rule and improperly credited the testimony of doctors other than Dr. Herard. Indeed, the bulk of Plaintiff's argument on this point in her Objections revolves around the claim that Dr. Herard had vastly superior knowledge of her conditions and therefore would have been more properly relied on than the consultative physicians. Id. at 6.

As with the issue of other potential causes of Plaintiff's disability that were not addressed by the ALJ or Judge Bianchini, this issue ultimately comes down to whether the ALJ relied on sufficient evidence in deciding which testimony to credit. Further, as discussed *supra*, "[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses . . . ." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (citations omitted). The Court takes seriously its obligations as a reviewing court and is cognizant of its responsibility not to rubber stamp the errors of another decisionmaker, but to insure, independently, that justice is done. Nevertheless, in conducting its review, the Court is bound by the standards put forth by statute and by the Second Circuit and may "not substitute [its] judgment for that of the Commissioner." White, 2008 WL 3884355, at *11 (citing Fiorello, 725 F.2d at 176). As a result, the Court may not vacate the ALJ's ruling because of his determination that certain medical evidence was more credible and useful than others.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 18) is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED**.

DATED:   December 27, 2012
         Albany, New York

Lawrence E. Kahn
U.S. District Judge